**J.R. COOPER**

v.

**The UNITED STATES.**

No. 681–84L.

United States Claims Court.

May 28, 1985.

Jim Waide, West Point, Miss., for plaintiff.

Alan Brenner, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht II, Washington, D.C., for defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

WHITE, Senior Judge.

This case is before the court on the defendant's motion asking that the complaint be dismissed, the plaintiff's response to the motion, and the defendant's reply to the response.

According to the complaint, the action is brought by the plaintiff under the Tucker Act (28 U.S.C. § 1491(a)(1) (1982)) "to recover damages because the defendant * * has destroyed private property for public use without paying just compensation in violation of the United States Constitution Amendment Five."

The complaint alleges that the plaintiff is the owner of a 467-acre parcel of land in Itawamba County, Mississippi, located near (and perhaps adjacent to) the Tombigbee River; that the property was acquired from S.K. Cooper pursuant to a warranty deed dated October 5, 1982, in which the grantor retained a life estate in the property and the grantee (the plaintiff) agreed to pay to Frances Cooper, throughout her life, one-half of the net proceeds realized from the property; that the United States Army Corps of Engineers, in connection with the construction of the Tennessee-Tombigbee Waterway, caused the Tombigbee River to become filled with brush and rubbish, which prevented the river from carrying

the waters which normally run through it; that, as a result of this obstruction in the river, timber on the property has been destroyed;[1] and that this destruction of timber "commenced in 1979 and has continued ever since and is continuing at the present date," with approximately 100 acres of timber having been totally destroyed and an additional 147 acres having been damaged as of the time when the complaint was filed (December 20, 1984), and with other timber on the property being subject to destruction in the future, so long as the obstruction in the Tombigbee River caused by the Corps of Engineers makes the river incapable of accommodating the waters normally flowing down it.

The defendant's motion to dismiss is based upon the Assignment of Claims Act (31 U.S.C. § 3727 (1982)), which, in effect, prohibits "a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim," unless the claim has already been allowed, the amount of the claim has been decided, and a warrant for payment of the claim has been issued.

The motion, assuming that the alleged taking occurred in 1979, while S.K. Cooper owned the property in question, states in part that "[t]he deed from S.K. Cooper to J.R. Cooper of the subject property would appear to violate the provisions of the above referenced statute," and asks the court to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted.

The plaintiff's response to the defendant's motion is in the form of an affidavit executed by J.R. Cooper, the plaintiff. The affidavit states in part that the plaintiff is the nephew of S.K. Cooper, the grantor in the deed dated October 5, 1982; that, in approximately 1960, S.K. Cooper and the plaintiff entered into an oral agreement that the land described in the complaint would belong to the plaintiff upon S.K. Cooper's death, if the plaintiff in the meantime would work the land and take care of S.K. Cooper until the latter's death and would take care of S.K. Cooper's wife (apparently the Frances Cooper named in the deed dated October 5, 1982) after the death of S.K. Cooper; that the deed of October 5, 1982 "merely manifested the agreement that had taken place in 1960"; that S.K. Cooper died on December 25, 1982; and that the plaintiff did not institute this action as the assignee of anyone, but in his own right.[2]

### Discussion

 It should be noted at the outset that the 1960 oral agreement between S.K. Cooper and the plaintiff did not convey any legal interest, future or otherwise, in the property to the plaintiff. Under Mississippi law, a fee interest in land cannot be conveyed by an oral agreement. *See Smith v. Taylor*, 183 Miss. 542, 184 So. 423 (1938). This is necessarily so in view of the following plain language in Mississippi Code Annotated § 89–1–3 (1972):

An estate of inheritance or freehold * * * in lands shall not be conveyed from one to another unless the conveyance be declared by writing signed and delivered.

Accordingly, the plaintiff was not the owner of any legal interest in the 467-acre parcel of land until after the warranty deed of October 5, 1982, was executed by S.K. Cooper.

 In an action under the Fifth Amendment based upon the alleged taking by the United States, through inverse condemnation, of property without just compensation, it is clear that only the owner of the property at the time of the taking is entitled to be compensated for the taking. *See United States v. Dow*, 357 U.S. 17, 20–21, 78 S.Ct. 1039, 1043–44, 2 L.Ed.2d

---

**1.** The destruction of timber presumably resulted from the overflow of impounded water onto the land.

**2.** It is necessarily inferred that the 1960 agreement was oral, as there is no reference to a written instrument earlier than the deed of October 5, 1982, which (according to the plaintiff's affidavit) "manifested the agreement that had taken place in 1960."

1109 (1958); *Lacey v. United States*, 219 Ct.Cl. 551, 560, 595 F.2d 614, 619 (1979). It is also clear that any attempt by such an owner to assign his taking claim to a subsequent owner of the property would be subject to the prohibition in the Assignment of Claims Act, previously mentioned.

■ Therefore, the plaintiff in this case cannot successfully maintain an action for any taking of the property involved here that occurred in 1979, or, indeed, for any taking that occurred before the plaintiff's acquisition of a fee interest in the property under the deed of October 5, 1982.

The granting of the defendant's motion to dismiss would be proper if it clearly appeared from the papers before the court that the alleged taking involved in the action occurred before October 5, 1982. There is uncertainty in the present record, however, as to just when the alleged taking occurred.

As previously stated, the complaint alleges that the destruction of timber on the property commenced in 1979, has continued ever since, and is continuing at the present time; that, at the time when the complaint was filed (on December 20, 1984), approximately 100 acres of timber had been totally destroyed and an additional 147 acres of timber had been damaged; and that additional timber will be destroyed in the future, so long as the obstruction in the Tombigbee River allegedly caused by the Corps of Engineers prevents the river from accommodating the waters normally flowing down it.

Determining the date of a taking, particularly in a flooding case, is often a difficult problem. As this court's predecessor, the United States Court of Claims, noted in *Barnes v. United States*, 210 Ct.Cl. 467, 480, 538 F.2d 865, 873 (1976), which involved an alleged taking of land by means of flooding, "[a]dopting a date of taking must often be done in a somewhat imprecise manner, this aspect of the cases being in the nature of a jury verdict." *See also United States v. Dickinson*, 331 U.S. 745, 749, 67 S.Ct. 1382, 1385, 91 L.Ed.2d 1789 (1947).

One source of difficulty in ascertaining the date of taking in a flooding case is that, in order for a government-induced flooding to constitute a taking, the flooding must be inevitable and recurring. *See, e.g., Barnes v. United States, supra*, 210 Ct.Cl. at 474–75, 538 F.2d at 870; *Hartwig v. United States*, 202 Ct.Cl. 801, 809–10, 485 F.2d 615, 619–20 (1973); *Singleton v. United States*, 6 Cl.Ct. 156, 162 (1984); *Amick v. United States*, 5 Cl.Ct. 426, 429–30 (1984). In *Barnes*, for example, the court held that the taking by flooding occurred in November 1973, when "the permanent character of intermittent flooding could fairly be perceived," although there had been sustained flooding of the land as early as 1969 (210 Ct.Cl. at 479–80, 538 F.2d at 873).

■ Taking claims must be decided on the particular facts of each case. *Berenholz v. United States*, 1 Cl.Ct. 620, 626 (1982), *aff'd*, 723 F.2d 68 (Fed.Cir.1983).

At what point the flooding allegedly induced by the Corps of Engineers in this case might have constituted a compensable taking of property is not a matter that can readily be determined from the plaintiff's sketchy description of what happened to the land and the timber on it. Accordingly, the question of when a taking (if any) occurred cannot be answered on the basis of the facts now before the court.

In view of the uncertainty as to when the taking complained of actually occurred, it would not be appropriate for the court to dismiss the complaint.

*Conclusion*

For the reasons previously stated, the court concludes that the defendant's motion to dismiss the complaint should be, and it is hereby, denied, but the denial is without prejudice to the subsequent dismissal of the complaint if it is determined, upon a further development of the facts, that the taking complained of occurred before October 5, 1982, or that the evidence fails to show a compensable taking.

**256**

The defendant's answer to the complaint shall be filed within 30 days from the date of this order.

IT IS SO ORDERED.