YACHTS AMERICA, INC., and Thomas
Bruce Wilson, Appellants,

v.

The UNITED STATES, Appellee.

Appeal Nos. 85–991, 85–992, 85–2586
and 85–2587.

United States Court of Appeals,
Federal Circuit.

Dec. 9, 1985.

Stephen Leventhal, of Bethesda, Maryland, argued for appellants. With him on the brief was Robert J. Zweibel, of counsel.

Laura E. Frossard, Dept. of Justice, of Washington, D.C., argued for appellee. With her on the brief were F. Henry Habicht, II, Asst. Atty. Gen., Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Dir. Martin W. Matzen, Dorothy R. Burakreis, E. Kathleen Shahan and Blake A. Watson. M. Kevin Voyles, Office of the Sol., Dept. of the Interior, of Washington, D.C., of counsel.

Before MARKEY, Chief Judge, NICHOLS, Senior Circuit Judge, and SMITH, Circuit Judge.

NICHOLS, Senior Circuit Judge.

We affirm the November 19, 1984, unpublished decision of the Claims Court, No. 239–79L, denying the compensation claim of Yachts America, Inc. (Yachts) for the taking of the business and the leasehold,

for the breach of an implied concessions contract, and for inverse condemnation. We also affirm the May 29, 1985, Claims Court decision, 8 Cl.Ct. 278, denying Yachts' Fed.R.Civ.P. 60(b) motion.

## Background

The claims of Yachts for compensation for the taking of approximately eight acres of marina property assertedly owned by it, and of its marina business, has been the subject of litigation, both in this court and others, for the past 10 years. *See e.g., Wilson v. Fort Washington Marina, Inc.,* No. D–8967 (Cir.Ct. Prince Georges County, Sept. 18, 1975); *Wilson v. Fort Washington Marina, Inc.,* No. 56,019 (Cir.Ct. Prince Georges County, Sept. 18, 1975); *United States v. Yachts America, Inc.,* 745 F.2d 52 (4th Cir.1984); *Wilson v. United States,* 733 F.2d 966 (D.C.Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984); *Yachts America, Inc. v. United States,* 673 F.2d 356, 230 Ct.Cl. 26, *cert. denied,* 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982); *Yachts America, Inc. v. United States,* 3 Cl.Ct. 447 (1983); *Yachts America, Inc. v. United States,* No. 239–79L, slip op. (Cl.Ct. Nov. 19, 1984); *Yachts America, Inc. v. United States,* 8 Cl.Ct. 278 (1985). Because the Court of Claims decision sets forth the facts in detail, we present only the most relevant facts here.

Yachts and its president Thomas Wilson had leased eight acres of marina property from Fort Washington Marina (Marina) with an option to purchase if exercised prior to July 31, 1974. Given the "boating explosion," it is perhaps needless to say that such a marina fronts on navigable water, provides docks and related services for small vessels, mostly those used for pleasure, and is equipped to satisfy their requirements for fuel, water, ice, etc. It often includes restaurant facilities, as here. The instant property is in the neighborhood of Fort Washington, the venerable fortress guarding the water approaches to the National Capital, and is just across the Potomac River from Mount Vernon, the historic home of George Washington. The parties did not enjoy a harmonious relationship; Yachts filed three suits against Marina for breach of contract and for determination that it was the equitable owner. During the pendency of these lawsuits, the United States became the owner of the real property in dispute on October 15, 1974, pursuant to Pub.L. No. 93–444, 88 Stat. 1304 (1974), an act of legislative taking. The congressional purpose was to enlarge the National Park Fort Washington had previously become, and to protect the view from Mount Vernon. Negotiations in July 1975, between the government and Marina, resulted in a payment of $750,000 into an escrow to accommodate the pending litigation and several mortgages. In October 1975, Marina and Yachts settled their disputes, signed a mutual release clause, and agreed to a $300,000 judgment in favor of Yachts, made part of a contemporaneous consent decree. Shortly thereafter, Marina became insolvent. Counsel say the money in escrow all went to secured creditors of Marina. Yachts unsuccessfully sued the government, Marina, and the escrow agent for $750,000 and petitioned our predecessor, the Court of Claims, for just compensation.

In 1982, the Court of Claims determined with respect to Count I Ownership Claim, that the 1975 consent decree and mutual release clause collaterally estopped Yachts from asserting that it had properly exercised its purchase option under the lease, and precluded Yachts from claiming ownership of the marina. The court, however, remanded the Count I Business Taking Claim to determine whether there was any compensable taking of Yachts' marina business. The court remanded Count II Leasehold Takings Claim for a determination of whether there was a compensable taking of the last 17 days of Yachts' leasehold. These remands were addressed to the trial division of the old Court of Claims, and became business of the new Claims Court under the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25. The court then determined that Pub.L. No. 93–444 did not grant Yachts a compensable

*right* to "orderly termination" and, accordingly, that Pub.L. No. 94–578, 90 Stat. 2732, which exempted the marina property from the orderly termination provision, could not have taken such a right. The court accepted, arguendo, that the "right" to orderly termination meant some kind of interest in the property taken, but whatever it meant, Yachts had not less of it, but more. Such termination meant allowing businesses on other property taken a reasonable time to remain in possession pending inevitable relocation. Congress did not ever mean to preclude leasing the marina property for that purpose indefinitely if agreement on terms could be reached because it was not located where it spoiled the view from Mount Vernon; the amendment clarified this meaning. Finally, the Court of Claims remanded the government's counterclaim for rent.

While so far as Congress was concerned, the Department of the Interior might still lease the marina property to Yachts if, as with any other leasehold property, the parties could agree on terms, the court's opinion cannot be read as conferring somehow a right on Yachts to remain in possession independent of any such agreement.

In 1984, the Claims Court determined that Yachts suffered no compensable business taking because the Count I Business Taking Claim could rest only on equitable ownership of the realty which the Court of Claims had already denied. The court also determined that Yachts suffered no compensable taking of the leasehold in the absence of government interference, especially where the lease provided for termination in the event of a governmental taking. With regard to amended Count IV, the court determined that there was no indication of any concessions contract implied in fact between Yachts and the National Park Service (NPS) and that Yachts was merely a tenant at sufferance. Lastly, the Claims Court found an implicit understanding that the government would not charge rent. Yachts appeals from this decision; the government does not.

Ultimately, negotiations for a concession contract or a lease collapsed. Interior invited proposals and Yachts submitted none that Interior deemed responsive. After several rent-free years, Yachts was eventually evicted. Its basic error would seem to have been that it thought it had rights in the disputed premises not dependent on its ability or even effort to please Interior as proprietor of the park and putative landlord.

*Opinion*

*Count I—Ownership Claim*

 Yachts argues that the Court of Claims incorrectly determined that Yachts was not the equitable owner of the marina property and points as proof to an interlocutory order in *Wilson v. Fort Washington Marina, Inc.*, No. 56,019 (Cir.Ct. Prince Georges County, Sept. 18, 1975) which found that Yachts had exercised its purchase option. We will not disturb the Court of Claims determination that "collateral estoppel now bars plaintiffs from relitigating an essential element of the Count I Ownership Claim, *viz.* whether Yachts obtained equitable ownership through a July 1974 exercise of the purchase option," *Yachts America, Inc. v. United States*, 673 F.2d 356, 360, 230 Ct.Cl. 26, *cert. denied*, 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982), for three reasons. First, Yachts has already unsuccessfully sought review of the Court of Claims' decision in the Supreme Court. Second, this court does not sit in appellate review of the Court of Claims, *City of Fulton v. United States*, 751 F.2d 1255, 1256 (Fed.Cir.1985), *cert. granted*, —— U.S. ——, 105 S.Ct. 3523, 87 L.Ed.2d 649 (1985); *Gindes v. United States*, 740 F.2d 947, 951 (Fed.Cir.) (Nichols, J., concurring), *cert. denied*, —— U.S. ——, 105 S.Ct. 569, 83 L.Ed.2d 509 (1984). Finally, the Court of Claims holding is the law of the case which we would not overrule unless one of three circumstances existed: the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of law applicable to such issues, or the decision was clearly erroneous and would

work a manifest injustice. *Gindes v. United States*, 740 F.2d at 950. Yachts has not proved the existence of any of the three exceptional circumstances; they unsuccessfully assert only that the Court of Claims erred in disregarding the interlocutory order. The Court of Claims correctly disregarded the interlocutory order which did not constitute a final judgment and was therefore not automatically entitled to a conclusive effect under *res judicata*. *See* 1B J. Moore, W. Taggart, & J. Wicker, Moore's Federal Practice ¶ 0.416[3] (2d ed. 1984). Moreover, "mere suspicion of error, no matter how well supported, does not warrant reopening an already decided point. Only if we were convinced to a certainty that [the] prior decision was incorrect would we be warranted in now reexamining it." *Gindes v. United States*, 740 F.2d at 951; *Northern Helex Co. v. United States*, 634 F.2d 557, 562, 225 Ct.Cl. 194 (1980).

### Count I—Business Taking Claim

■ Yachts argues that on remand the Claims Court failed to recognize the existence of a claim for taking a going business, separate and apart from its claim for taking of real estate, as the Court of Claims instructed. Yachts, however, misconstrues the Court of Claims language; the Court of Claims never "understood Wilson's business ownership claim to be separate and apart from ownership of real property." Brief for appellants at 27. The court was merely stating its interpretation of Yachts' counts. In fact, the court noted that "the record and argument are so scant as to that claim * * *" as to make a determination impossible. The Claims Court was correct therefore in determining that the business taking claim was viable only if Yachts had established equitable ownership of the realty. *Yachts America, Inc. v. United States*, No. 239–79L, slip op. at 7 (Ct.Cl. Nov. 19, 1984). Because the Court of Claims has already decided that Yachts did not have equitable ownership, there is no compensable business taking. We agree with the Claims Court that "[i]nterference with or destruction of a business as a re-sult of a legislative taking [of realty] is compensable under the fifth amendment only indirectly, to the extent the land's adaptability for use in a particular business is an element to be considered in the valuation of the land. It is not compensable as a separate element." *Id.* at 7. *See Mitchell v. United States*, 267 U.S. 341, 344–45, 45 S.Ct. 293, 294, 69 L.Ed. 644 (1925) (destruction of business is unintended incident of taking). *See also Yachts America, Inc.*, 673 F.2d at 365 (Nichols, J., concurring). The statutes involved were not stated to be meant to take the going business as a business, which of course would be a different case.

### Count II—Leasehold Taking

■ Yachts argues that the government interfered with the last 17 days of their leasehold. The government assumed ownership on October 15, 1974; the leasehold terminated on October 31, 1974. The Claims Court correctly determined that Yachts' complaint contained nothing that could be construed as interference. Yachts continued in possession long after the lease would have expired. The government's decision to negotiate with Marina, the owner, instead of Yachts, the leaseholder, is not interference. As discussed above, Yachts can no longer argue that it is the equitable owner of the property and therefore the proper party with whom to negotiate. Moreover, the lease agreement itself, providing that in a government taking the lease would terminate when possession was surrendered and that the entire condemnation award would go to the landowner, precluded Yachts from having an interest in the property after the taking. *See United States v. Petty Motors*, 327 U.S. 372, 375–76, 66 S.Ct. 596, 598–99, 90 L.Ed. 729 (1946) (where such a clause for termination on the taking by the government established that the tenant had no right which existed beyond the taking).

### Count III—Taking of Right of "Orderly Termination"

■ Yachts argues that Pub.L. No. 93–444 granted them a *right* of orderly termi-

nation which Pub.L. No. 94–578 put an end to, constituting a compensable taking. The Court of Claims determined that Pub.L. No. 93–444 did not create, and Pub.L. No. 94–578 did not revoke, a *right* in Yachts to orderly termination, whatever the term meant as to persons having interests in other parcels. The "right," if any, was against disorderly, *i.e.*, too precipitate, termination "of operations," and those of Yachts were not terminated at all until years later. The amendment in Pub.L. No. 94–578 was to make it clear no termination at all was required in the case of the marina operation. We think it was intended to correct Pub.L. No. 93–444, retroactive to that law's date of enactment, to reflect true congressional intent all along, not change Pub.L. No. 93–444 after being in effect two years in its uncorrected form. The legislative history quoted in the Court of Claims' opinion makes this clear. The Interior Department had construed Pub.L. No. 93–444 as requiring termination, if orderly. The amendment was remedial. We shall not disturb that holding under the law of the case doctrine, discussed *supra*. Appellants' repetition, and its absurd contention, are all too illustrative of how this litigation has been kept going all these years. This is a case where nothing has seemed to get decided.

### Count IV—Implied Concessions Contract

Yachts would have us hold that there was an implied in fact contract between Yachts and the government based on the government's authorization to continue to operate the marina, government evaluations of the marina property, and the general actions by both parties. It is a non sequitur to claim that because the government treats a party like a concessioner, that party is therefore a concessioner. There is much more to concessioner status than that.

■■■ The Claims Court correctly determined that there was no meeting of the minds about a concession contract, and that the terms and conditions necessary to find an implied contract are not present. The

government regarded Yachts as a tenant at sufferance; we agree with Judge Mayer, who stated in a related case, *Yachts America, Inc. v. United States,* 3 Cl.Ct. 447, 452 (1983), that the duties and obligations Yachts says support an implied contract are the same owed by tenant at sufferance, *i.e.*, to keep the premises clean, etc. A Claims Court implied contract must be implied in fact, *i.e.*, the legal requisites of an express contract, offer, acceptance, agreement, consideration, etc., must be provided, though in part by implication only. *See A–B Cattle Co. v. United States,* 621 F.2d 1099 (Ct.Cl.1980); *Russell Corp. v. United States,* 537 F.2d 474, 482 (1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977); *Nitol v. United States,* 7 Cl.Ct. 405, 415 (1985); *Juda v. United States,* 6 Cl.Ct. 441, 452 (1984). None of the actions Yachts describes can be construed as an offer, acceptance, or consideration. The government evaluation form does not produce a contrary decision; the use of evaluation forms is readily explained by the fact that appellants were, as appellee argues, in possession as a tenant at sufferance.

### Count V—Inverse Condemnation

■■■ Yachts asserts that the marina property is subject to the Concessions Policy Act of 1965 (16 U.S.C. § 20), that Wilson himself is a concessioner under the definition set forth in 16 U.S.C. § 20a, and that, therefore, Yachts is entitled to the protections granted such persons pursuant to 16 U.S.C. § 20b(b), in particular, the reasonable opportunity to realize a profit. Yachts argues that the government denied Yachts' right to a reasonable opportunity to make a profit by not contracting with Yachts and that this constitutes a taking by inverse condemnation. We do not agree. 16 U.S.C. § 20a (1982) provides:

> The Secretary of the Interior shall take such actions as may be appropriate to encourage and enable private persons and corporations * * * to provide and operate facilities and services which he deems desirable for the accommodation

of visitors in areas administered by the National Park Service.

Congress did not intend 16 U.S.C. § 20a to provide concessioner status to all parties who desire it and may be characterized as providing a service to the community. *See* S.Rep. No. 765, 89th Cong., 1st Sess. 5, *reprinted in* 1965 U.S.Code Cong. & Ad. News 3489, 3493 (statute enacted to emphasize the importance of encouraging concession operation).

Moreover, Congress did not intend 16 U.S.C. § 20b(b) to grant a right to make a profit. 16 U.S.C. § 20b(b) (1982) states:

The Secretary shall exercise his authority in a manner consistent with a reasonable opportunity for the concessioner to realize a profit on his operation as a whole commensurate with the capital invested and the obligations assumed.

■ Moreover, previous courts have determined that Pub.L. No. 93–444 did *not* grant Yachts a right to operate a concession at the marina. *Yachts America, Inc. v. United States*, 673 F.2d 356, 230 Ct.Cl. 26, *cert. denied*, 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 *Wilson v. United States*, No. 83–286, slip op. at 1–2 (D.D.C. Aug. 15, 1983). This is *res judicata* for Yachts' inverse condemnation claim; without a claim for ownership, there is no claim to compensation for inverse condemnation. *See United States v. Dow*, 357 U.S. 17, 20–21, 78 S.Ct. 1039, 1043–44, 2 L.Ed.2d 1109 (1958) (only the owner at the time of taking is entitled compensation); *Lacey v. United States*, 595 F.2d 614, 619 (1979); *Cooper v. United States*, 8 Cl.Ct. 253, 254–55 (1985).

## Rule 60(b) Motion

Finally, we determine that the Claims Court correctly denied Yachts' Rule 60(b) motion for relief from judgment. The grant or denial of a motion for relief from judgment is discretionary. The standard of review, therefore, is whether the trial court abused its discretion. *United States v. Atkinson*, 748 F.2d 659, 660 (Fed.Cir.1984). The Claims Court did not abuse its discretion in holding that Yachts failed to show:

(1) that the evidence was actually "newly discovered," that is, it must have been discovered subsequent to the trial; (2) that the movant exercised due diligence; and (3) that the evidence is material, not merely impeaching or cumulative, and that a new trial would probably produce a different result.

*Warner v. Transamerica Insurance Co.*, 739 F.2d 1347, 1353 (8th Cir.1984). *See also United States v. Walus*, 616 F.2d 283, 287–88 (7th Cir.1980).

■ The Claims Court correctly determined that Yachts' 1976 evaluation form was not "newly discovered": Yachts knew their business had been evaluated in 1976, brief for appellants, at 13 n. 50; Yachts had the files containing the evaluation form for one year before finding the form; Yachts did not seek to obtain a copy from the government. Further, the evaluation form was only cumulative to their unsuccessful proffer of the 1977 evaluation form. Finally, nothing in the 1976 form can be construed to support Yachts' claim of an implied contract. The evaluation form on its face is a report on whether Yachts is performing as a marina concessioner in an acceptable manner. This had a bearing on whether a lease should be awarded to Yachts, a matter then under consideration. It in no way shows the parties had agreed on such a lease, yet for an implied contract, such an agreement would be a necessary element.

## Conclusion

In view of the foregoing, no error is found in the doing of the court below. We will not reopen, reconsider, or review the several determinations of the former Court of Claims. We reject the notion that anything the government did constituted a taking of appellants' business. We reject any claim on a contract or contracts implied in fact, or that the government has "taken anything of appellants."

AFFIRMED