**PRESTEX, INC.**

v.

**The UNITED STATES.**

No. 558–82C.

United States Claims Court.

Jan. 11, 1984.

318

Theodore M. Kostos, Philadelphia, Pa., for Prestex.

Helene M. Goldberg, with whom was Acting Asst. Atty. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

LYDON, Judge:

By opinion dated December 2, 1983, 4 Cl.Ct. 14, the court denied plaintiff's motion to extend the time for filing a notice of appeal under Federal Rule of Appellate Procedure (FRAP) 4(a)(5). In essence, the court rejected plaintiff's contention that an attorney's mistake in calculating the appeal time constituted "excusable neglect" because certain medications he was taking caused him to be confused momentarily as to the last day on which the Notice of Appeal had to be filed. Plaintiff has now moved to vacate and expunge the court's opinion, or, in the alternative to reconsider said opinion.[1] Plaintiff does not cite the court's rule it relies on in support of its motion. Presumably, plaintiff is proceeding under RUSCC 59(a)(1).

In support of its motion, plaintiff relies on a third affidavit of the trial attorney together with an affidavit from a medical expert. After careful consideration of the additional materials submitted by plaintiff, it is concluded no persuasive justification has been advanced which supports vacation of the court's prior opinion, and reconsideration of the matter reaffirms the view that the court's December 2, 1983, decision was correct, in law and in fact.

As an initial matter, post-opinion motions to vacate or reconsider are not favored. This is especially true where a party has had a fair opportunity to argue to litigate the point in issue. *General Electric Co. v. United States,* 189 Ct.Cl. 116, 117–18, 416 F.2d 1320, 1321 (1969). *See Carter v. United States,* 207 Ct.Cl. 316, 318, 518 F.2d 1199, cert. denied 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86 (1975). At the time the court

---

1. Plaintiff has also belatedly moved for a protective order to seal all the documents in this case which refer to the trial attorney's medical status. Such a motion, however, must be considered in light of the public's common law right to inspect judicial records. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). There is a strong presumption in favor of public access to judicial records. *United States v. Edwards,* 672 F.2d 1289, 1293, 1294 (7th Cir. 1982); *United States v. Hubbard,* 650 F.2d 293, 317 (D.C.Cir.1980). Fear of improper dissemination of said record is most improbable. There is little probability that the public, at large, or others, in particular, have any interest in the medical history of the individual involved. Both the court and defendant are presumed to handle case materials in their possession with prudence and circumspection. Further, a public figure is not involved in this case, and the record does not contain any titillating or embarrassing medical information which would justify placing the record under seal. Finally, a protective order sealing all materials referring to plaintiff's medical status would unnecessarily burden the court with the administrative task of sanitizing and policing the case materials to ensure that only those materials without mention of the trial attorney's medical status were subject to public inspection. In light of these considerations, the court determines that the nature of the medical materials involved in this case do not warrant the court taking the extraordinary step of placing the record, or portions thereof, under seal.

rendered its decision on December 2, 1983, the case was ready for decision. Plaintiff had filed its reply brief on November 25, 1983 and ostensibly had presented to the court all its arguments and documentation.[2] Plaintiff now seeks to furnish additional evidence to the court after the court has decided the matter.

Plaintiff justifies this attempt to present additional evidence after opinion by stating the trial attorney could not be examined by an expert in pharmacology until November 30, 1983, and the doctor's report was not furnished to the trial attorney until December 2, 1983. Plaintiff also states that it believed that competent medical evidence would be needed to confirm the medical reasons alleged and put forward by the trial attorney as "excusable neglect." However, plaintiff must have known this on November 25, 1983, when it filed its reply brief. Plaintiff did not seek an extension of time to await such an examination and its results. Plaintiff refers to the court's December 2, 1983, opinion and observes that the court noted that plaintiff offered no medical authority in support of its medical excuse for not timely filing its Notice of Appeal. Plaintiff now states that the third affidavit of the trial attorney attaching a medical report from a doctor overcomes this deficiency. It would not be unreasonable to reject plaintiff's instant motion on the ground it had a fair opportunity to argue and support its position. The court has a right to know before it decides whether the parties have anything further to present. *General Electric Co. v. United States, supra,* 189 Ct.Cl. at 118, 416 F.2d at 1322. It is not unfair to state that the court has been ill-served by the manner in which the trial attorney had handled this matter.[3]

Despite the fact that an appropriate basis for disposing of plaintiff's motion exists, the court will approach the presentation of the proffered additional evidence hospitably and give consideration to plaintiff's belated evidence in determining whether there is merit to plaintiff's reconsideration request. Litigants in this court should be forewarned, however, that in the future, the court will be less hospitable in considering post-opinion evidence.

Plaintiff submits the report of a medical doctor which, it maintains, mandates a change in the court's opinion of December 2, 1983. It is noted that this doctor was not represented to be the trial attorney's regular doctor or the doctor who prescribed the medications which allegedly caused the momentary confusion on which plaintiff's "excusable neglect" position is based. Instead, this doctor is represented to be an expert in the field of pharmacology.

The report in question indicates that the doctor performed a complete history and physical examination of the trial attorney on November 30, 1983. The trial attorney provided him with information on his past medical history and his use of medications. In pertinent part, this report stated, "On physical examination, we found [the trial attorney] to be a pleasant, alert, intelligent young man, in no acute distress who looked his stated age [34 years], although slightly obese." The report also found the trial attorney to be normal in other respects, *e.g.,* reflexes were essentially within normal limits as was his overall neurological examination."

---

2. In his third affidavit, the plaintiff's trial attorney states that he telephoned the clerk's office on November 28, 1983, and advised that office that he would submit a medical report from a doctor. The clerk's office properly advised him that any such submission must be accomplished by the filing of an appropriate motion. The procedure followed by the trial attorney in this instance was improper and should not be repeated. On December 2, 1983, plaintiff's attempt to file additional affidavits was properly rejected by the clerk's office since the court had rendered its opinion on the matter.

3. Plaintiff's attempt to distinguish *General Electric Co. v. United States,* 189 Ct.Cl. 116, 117–18, 416 F.2d 1320, 1321 (1969) on the ground that the instant case merely seeks to supplement the record with corroborating evidence is without merit. The fact is plaintiff seeks to supply additional evidence after the court has decided the matter and this practice is the procedure the court found offensive in the *General Electric Co.* case.

In reviewing the trial attorney's problems, as presented to the doctor by the trial attorney, the report of the doctor stated that the medications which the trial attorney indicated he had been taking contained ingredients that can produce several adverse problems. The doctor states that "it is entirely possible" plaintiff's mild confusional "state and/or malaise" could have been related to medication such that the trial attorney "was prevented from carrying out his normal activities in the manner in which he usually performs." The report then recited side effects associated with the medications in question and observed that, "[i]t would be possible that these problems were manifested by [the trial attorney] all at the same time and materially contributed to his worsening condition at that time." It is not unreasonable to assume that this was the first time the doctor had examined the trial attorney.

■ It is noted that this report states only that the medication could have had side effects, not that it in fact did affect the trial attorney. Again, the report did not discuss or deal with the length of these effects, the time of these effects or provide any information relative to moments when plaintiff was momentarily confused. The only difference between the record existing at the time of the December 2, 1983, opinion and the present is the existence of the above-discussed medical report. This medical report, like the prior affidavits, can only state that the medications the trial attorney was taking can produce side effects and may have caused him momentary confusion at some undefined time.

The court is not persuaded that momentary confusion brought on by medication side effects was the cause of the trial attorney's failure to timely file the Notice of Appeal. It is to be remembered that the trial attorney erroneously believed that he had three (3) extra mailing days to file this Notice. Accordingly, he believed November 17, 1983, a Thursday, not November 14,

1983, a Monday, was the date within which he had to have the Notice reach the clerk of the court. When he received authority from the client to file the Notice of Appeal on the 14th of November,[4] he promptly dispatched it to the clerk's office in Washington, D.C., by Federal Express. Since he had until the 17th of November in his view within which to file the Notice, he obviously felt he had sufficient time to send it Federal Express. The Notice was received by the clerk on the 15th of November, a Tuesday. Had the Notice due date been November 17th, plaintiff's use of Federal Express would have been justified. The trial attorney now says that if he had not been momentarily confused he would have hand carried the Notice to Washington on November 14th. However, such a view is obviously second guessing after the trial attorney had been notified by the clerk's office that the correct Notice due date was November 14, 1983. The above scenario reflects, in the opinion of the court, a case of counsel's miscalculation of the appeal time and does not indicate a mental lapse or momentary confusion because of medication side effect on the part of the trial attorney as the cause of the untimely filing of the Notice of Appeal.

One final point deserves more attention than it has received from plaintiff. The trial attorney, on whose mental confusion the plaintiff rests its excusable neglect position, is not the attorney of record in this case. In its opinion of December 2, 1983, the court (p. 19) commented on the absence of any affidavit from the attorney of record for plaintiff. There is no evidence in this case that he was unaware of the deadline for filing the Notice of Appeal. As attorney of record for plaintiff, he cannot escape his responsibilities in this regard by shifting attention to a subordinate.

Plaintiff has not attempted to explain why the attorney of record in this case did not ensure the timely filing of plaintiff's appeal. Rather, plaintiff has chosen to ig-

**4.** It is to be noted that the trial attorney claims that he had prepared the Notice of Appeal 2

weeks prior to November 14, 1983.

nore the attorney of record's responsibility by characterizing it as a "non-issue" in the case. However, the sole responsibility for ensuring compliance with court filing deadlines lay with the attorney of record in the case. Even if the attorney of record had delegated work in the case to another attorney, it was the attorney of record, not the attorney to whom the work had been delegated, who was answerable to the court and the client for any failure to comply with filing requirements. *Hawkins v. Fulton County,* 96 F.R.D. 416, 420–21 (N.D.Ga. 1982); *see* RUSCC 11, 81(d).[5] As the court stated in *J.M. Cleminshaw Co. v. City of Norwich,* 93 F.R.D. 338 (D.Conn.1981):

> ██f counsel of record entrusts a legal matter to another attorney, that counsel of record is under a duty to exercise proper care in selecting the attorney and in supervising his work. * * * [T]his duty to supervise co-counsel includes the duty to remain aware of all acts and omissions by co-counsel which may materially affect his client's interest. *Id.* at 349 n. 5. [Citation omitted.]

██ In this case, the attorney of record bore the responsibility for ensuring the timely filing of plaintiff's appeal. Since the attorney of record had this responsibility, it is he, not another to whom he has delegated work on the case, who must provide the reasons to support a finding of "excusable neglect" for failure to file a timely appeal. Instead of providing these reasons, the attorney of record in this case has remained silent. Therefore, even if the court accepted the "medication induced confusion" argument of the trial attorney, this argument alone would be insufficient to constitute "excusable neglect" unless accompanied by some explanation by the attorney of record of his failure to properly supervise the trial attorney and ensure the timely filing of an appeal in this case.

5. *Hawkins v. Fulton County,* 96 F.R.D. 416 (N.D.Ga.1982) involved court sanctions for failure to comply with a discovery order. The court ordered sanctions only against the attorney of record for the defendant despite the attorney of record's argument that he had delegated responsibility for discovery matters to another attorney. The court stated "even if

Plaintiff's motion to vacate and expunge the court's opinion of December 2, 1983, is denied. Plaintiff's alternative motion that the court reconsider the December 2, 1983, opinion is granted; the decision has been reconsidered and herein reaffirmed. Plaintiff's motion for a protective order is denied. Plaintiff's motion for oral argument is likewise denied since, in the opinion of the court, it would serve no useful purpose.

another attorney is now responsible for all discovery matters, the court finds that Mr. Axam is attorney of record and is responsible as such. * * * [T]he court finds that Ms. Forsling has never been attorney of record in this case. She therefore is not responsible for any failure to comply with this court's discovery order." *Id.* at 421.