**ADVANCE AMERICA SERVICES, INC., Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**No. 91–1039 C.**

United States Court of Federal Claims.

June 14, 1995.

Mary A. Vasaly, Minneapolis, MN, argued by Mark W. Lee, for plaintiff.

Matthew S. Bode, Washington, DC, with whom were Bryant G. Snee, Asst. Director, David M. Cohen, Director, Commercial Litigation Branch, and Frank W. Hunger, Asst. Atty. Gen., Civ. Div., U.S. Dept. of Justice, for defendant.

*OPINION*

SMITH, Chief Judge.

This matter is before the court on plaintiff's motions for relief from judgment on the grounds of excusable neglect pursuant to RCFC 60(b)(1) and for leave to file an appeal from the judgment entered on October 24, 1994 pursuant to FRAP 4(a). For the reasons stated below it is the sad duty of the court to deny these motions.

## BACKGROUND

This case originated as a suit upon a contract with the government for the repair, maintenance, and overhaul of government-owned vehicles. Plaintiff, Advance America Services, Inc., filed its complaint in this court on March 26, 1991. Plaintiff sought $90,000 in compensation for an alleged breach of contract based on the difference between actual requirements and the estimates the government had provided.

On August 18, 1994, this court issued an opinion filed *nunc pro tunc* on October 18, 1994, dismissing this case under RCFC 37, as a sanction for plaintiff's violation of discovery orders. *Advanced America Services, Inc. v. United States,* 32 Fed.Cl. 191 (19^4).[1] In *Advanced,* this court thoroughly reviewed the history of the case, and found that plaintiff's repeated failures to respond to defendant's discovery requests were wilful and in bad faith.

Plaintiff in this hearing requests that the record pertaining to the original opinion be supplemented with letters from its first attorney, Mr. Samuel Gdanski, and a new affidavit by its president, Steven Jannings, dated January 20, 1995, to support the argument that its failure to follow court-ordered discovery was because of a mistake in communication with its attorney. Advance America's fundamental argument is that its failure to supply various documents is due to its not being aware of a separate request to produce documents. To support this position, Advance America claims that it did not know about the government's separate Request for Production of Documents until after the *Advanced* opinion was issued. Mr. Jannings maintains in his January 20, 1995 affidavit that:

> On April 28, 1992, we received a letter from Mr. Gdanski that indicated that a request for documents was enclosed.... we do not recall receiving such a document and none is in our files which we believe to contain all of the documents that we received during the course of this case. The April letter did not indicate that it contained an enclosure.

The April 28, 1992 letter from attorney Gdanski to his client states:

> *Enclosed is the government's request for production of documents.* Please compile these as soon as possible. We have had a telephone conference call with the judge and things are progressing well, but we need your additional responses *and documents requested herein.* (Emphasis added).

During the course of this discovery dispute, Advance America's attorney sent numerous follow-up letters that mentioned the government's document requests, which are included in plaintiff's supplement. For example, on June 25, 1992, Mr. Gdanski sent Advance America a letter, stating:

> This is a follow up to our previous letters requesting production of documents. In light of this office not having received said documents, we have postponed the conference call scheduled for today until July 22nd at 2:00 p.m. *By not complying with this request, the case is put in jeopardy.*
>
> Please advise as to when this material will be furnished. (Emphasis added).

On July 15, 1992, Mr. Gdanski wrote to Advance America:

> This is a follow up to our previous letters and phone calls requesting production of documents. As discussed telephonically today with Karen Kasman of this office, I understand that you and Bill Regan are

---

1. Plaintiff's previous filings and statements before the court had used the name "Advanced America, Inc." Plaintiff has filed its latest motions under the name "Advance America, Inc.," which plaintiff's new counsel confirmed at oral argument held June 7, 1995, is the correct name for plaintiff.

pulling together the appropriate information and will forward it ASAP.

*I just want to make sure that you are aware that in light of this office not having received said documents, and by not complying with the material request, the case is put in jeopardy.*

Please provide this material as soon as possible. (Emphasis added).

On July 21, 1992, Mr. Gdanski forwarded to Advance America a copy of a letter sent to him by the government, which stated in relevant part: "As you know, Advanced America's response to the Government's request for production of documents, served on you December 6, 1991, was originally due on January 8, 1992. [Y]ou have made no responses to the Government's request for documents."

On December 1, 1992, Mr. Gdanski wrote to Advance America stating:

I need a letter from you sworn to before a notary public staying [sic] the following. This is premised on what you have represented to me.

"I, Steven P. Jannings, hereby certify under oath that to the extent any documents exist that we intend to rely on, and that have been requested by the government pursuant to its interrogatories, we have furnished all said documentation. No other written documentation exists and we hereby certify."

 . . . . .

We need this because they feel that there should be additional documentation, yet you have represented to me there is no other. I need this back in my office ASAP since it has to be filed with the court.

On February 11, 1993, Mr. Gdanski forwarded a copy of the government's January 27, 1993 letter to him to Advance America. In this letter the government contended that the certified statement quoted above inadequately complied with the court's order requiring the certification because:

[t]he statement addresses only documents requested pursuant to the Government's interrogatories; however, the statement must also certify that no documents requested in the Government's *requests for production of documents* exist.

The statement refers only to the plaintiff's release of documents that "we intend to rely on"; however, pursuant to the Court's order, the certified statement must address any documents that have been requested by the Government, either in its interrogatories or requests for production of documents, *whether Advanced America intends to rely on them or not.* (Emphasis in original).

According to his latest affidavit of January 20, 1995, Mr. Jannings discussed neither this revision nor why it was required with Mr. Gdanski. Instead, Mr. Jannings simply submitted the following statement by editing and incorporating his earlier statement:

I, Steven P. Jannings, hereby certify under oath that to the extent any documents exist that have been requested by the government pursuant to its interrogatories or Request for Production Documents [sic] No other written documentation exists and we hereby certify.

On March 9 and 10, 1993, the government deposed Mr. Jannings and several other senior officers of Advance America. These officers brought to their depositions a folder full of documents, which the government believes were responsive to its document requests. According to the government, Advance America's officers testified at this deposition that there were "hundreds and hundreds" more documents that the government considered responsive to its discovery requests in Advance America's files. Although it did release some copies at the deposition, Advance America did not release all of these documents, and never indicated that it would produce all the responsive documents.

On March 31, 1993 the government renewed its motion to dismiss. Mr. Gdanski sent Advance America a copy of this renewed motion, and requested that Mr. Jannings provide an affidavit to explain his certifications that responsive documents did not exist and the fact that undisclosed contract files were brought to the depositions. Mr. Gdanski filed this affidavit with his response to the government's renewed motion to dismiss.

On August 22, 1994, Mr. Gdanski sent Advance America a copy of the court's sanctions decision. Pursuant to this decision, the government submitted a bill of costs on October 12, 1994, in the amount of $20,045.22, representing the costs the government claimed were a result of Advance America's failure to adequately respond to the discovery requests. On October 19, 1994, Mr. Gdanski informed Advance America that the bill of costs had been submitted. On October 18, 1994, the clerk filed the court's August 18, 1994 opinion, *nunc pro tunc*, and on October 24, 1994, pursuant to the court's opinion, the clerk entered judgment dismissing the complaint.

On November 18, 1994, Mr. Jannings wrote to Mr. Gdanski inquiring about the time for appeal from the dismissal and bill of costs, and whether the costs included attorney fees. Mr. Gdanski replied on November 22, 1994 that he believed that the costs included attorney fees and that Advance America should check with the court about the deadline for filing an appeal.

Pursuant to RCFC 72 and the entry of judgment, Friday, December 23, 1994, was the last day upon which Advance America could file a notice of appeal. On December 24, 1994, Advance America retained Mark M. Walbran, who attempted to file in this court a "notice of motion and motion" accompanied by an affidavit of counsel. Mr. Walbran attempted to file a "notice of appeal to court of appeals from order and judgment" upon behalf of the plaintiff in the United States Court of Appeals for the District of Columbia. These documents were apparently rejected because Mr. Walbran was not admitted to practice before the Court of Federal Claims and because he sent the appeal to the wrong appellate court.

On January 27, 1995, plaintiff filed motions to substitute counsel, for relief from judgment on the grounds of excusable neglect, and for leave to file an appeal from the judgment entered on October 24, 1994. On February 14, 1995, the government filed a response, and on February 21, 1995 plaintiff filed a reply. On March 21, 1995, this court granted plaintiff's motion to substitute counsel.

On April 4, 1995 the clerk of this court filed a notice pertaining to the taxation of costs, and on April 24, 1995, the clerk filed a Taxation of Costs pursuant to RCFC 77.4. In this Taxation of Costs, the clerk charged duplication and costs incident to the taking of depositions in favor of defendant and against the plaintiff, referring the remaining costs requested in defendant's Bill of Costs to the court. Oral argument on plaintiff's motions for relief from judgment and for leave to file an appeal was held on June 7, 1995.

## DISCUSSION

### I. Relief from Judgment

Pursuant to RCFC 60(b), Advance America seeks relief from this court's judgment, entered on October 24, 1994, based upon mistake and excusable neglect. RCFC 60(b) provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or other proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect;

· · · · ·

As this court stated in *Yachts America, Inc. v. United States*, 8 Cl.Ct. 278, 281 (1985), *aff'd* 779 F.2d 656 (Fed.Cir.1985), *cert. denied by Wilson v. United States*, 479 U.S. 832, 107 S.Ct. 122, 93 L.Ed.2d 68 (1986), "[a] motion for relief from judgment is extraordinary relief entrusted to the discretion of the court, *United States v. Atkinson*, 748 F.2d 659, 660 (Fed.Cir.1984), which may only be granted in exceptional circumstances" (citation omitted).

#### A. Excusable Neglect

■ The Federal Circuit has employed a three-part test to determine whether a party has shown excusable neglect for the purposes of evaluating the typical motion made under RCFC 60(b)(1). This three-part test examines whether the moving party has a meritorious defense, whether culpable conduct by the moving party led to the judgment, and whether the nonmoving party will be prejudiced. *Information Sys. & Networks Corp. v. United States*, 994 F.2d 792, 795 (Fed.Cir.

1993). The Federal Circuit has distinguished efforts to obtain relief from typical default judgments and those involving relief from sanctions, suggesting that making the necessary showing to escape sanctions is more difficult. *Id.* at 797.

### 1. *Meritorious Defense*

 To obtain the extraordinary relief provided for under RCFC 60(b)(1) on the ground of excusable neglect, the moving party must at least show that its neglect was reasonable. Advance America argues that it never received a separate "Request for Production of Documents," and that it mistakenly believed that the only documents that the government requested were those requested as part of the government's interrogatories.[2]

There is some indication that Advance America may have been confused about the government's requests for production of documents. The wording of Mr. Jannings' second certification that the documents the government requested did not exist could suggest that he did not completely understand that the government had made a separate request for documents. The second certification states:

> I, Steven P. Jannings, hereby certify under oath that to the extent any documents exist that have been requested by the government pursuant to its interrogatories or Request for Production Documents [sic] No other written documentation exists and we hereby certify.

Nevertheless, the text of this certification separates the interrogatories from the Request for Production of Documents, and capitalizes the latter, suggesting that the Request for Production of Documents is separate and that Mr. Jannings knew this. The court emphasizes that the reason that this second certification was requested by the government was because the earlier certification did not state that the documents separately requested by the government's Request for Production of Documents did not exist. As the government emphasizes in its January 27, 1993 letter, which Mr. Gdanski forwarded to Advance America on February 11, 1993, the first certified statement inadequately complied with the court's order requiring certification. This letter states:

> The statement addresses only documents requested pursuant to the Government's interrogatories; however, the statement must also certify that no documents requested in the Government's *requests for production of documents* exist.
>
> The statement refers only to the plaintiff's release of documents that "we intend to rely on"; however, pursuant to the Court's order, the certified statement must address any documents that have been requested by the Government, either in its interrogatories or requests for production of documents.... (Emphasis in original).

This letter from the government emphasizes the separate nature of the government's request for the production of documents. This strongly suggests that Advance America's argument that it did not realize that this request was separate, even after it made the second certification, was completely unreasonable.

A crucial aspect of Advance America's argument is that it did not receive a copy of the government's Request for Production of Documents. In his January 20, 1995 affidavit, Mr. Jannings maintains that:

> On April 28, 1992, we received a letter from Mr. Gdanski that *indicated* that a request for documents was enclosed.... we do not recall receiving such a document and none is in our files which we believe to contain all of the documents that we received during the course of this case. *The April letter did not indicate that it contained an enclosure.* (Emphasis added).

However, the April 28, 1992 letter clearly states:

> *Enclosed* is the government's request for production of documents. Please compile these as soon as possible. We have had a telephone conference call with the judge and things are progressing well, but we need your additional responses *and documents requested herein.* (Emphasis added).

---

**2.** Mistake is a separate ground for relief under RCFC 60(b)(1). Although Advance America does not formally seek relief under this ground, the court will also discuss this ground.

The court finds the contention by Mr. Jannings that the April letter did not indicate that it contained an enclosure to be incredulous, because the language of the letter clearly indicates that a document request is enclosed. Mr. Jannings even admits in his own affidavit that "[o]n April 28, 1992, we received a letter from Mr. Gdanski that *indicated* that a request for documents was enclosed" (emphasis added). Even if the Request for Production of Documents was accidentally not enclosed, a reasonable client would have contacted its attorney to obtain the indicated enclosure.

Letters from its attorney also cast serious doubt on the reasonableness or credibility of Advance America's claim that it was unaware of the government's separate document request. For example, on June 25, 1992, Mr. Gdanski sent Advance America a letter, stating:

> This is a follow up to our previous letters requesting production of documents. In light of this office not having received said documents, we have postponed the conference call scheduled for today until July 22nd at 2:00 p.m. *By not complying with this request, the case is put in jeopardy.* Please advise as to when this material will be furnished. (Emphasis added).

On July 15, 1992, Mr. Gdanski again wrote to Advance America:

> This is a follow up to our previous letters and phone calls requesting production of documents. As discussed telephonically today with Karen Kasman of this office, I understand that you and Bill Regan are pulling together the appropriate information and will forward it ASAP.
>
> *I just want to make sure that you are aware that in light of this office not having received said documents, and by not complying with the material request, the case is put in jeopardy.*
>
> Please provide this material as soon as possible. (Emphasis added).

On July 21, 1992, Mr. Gdanski forwarded to Advance America a copy of a letter sent to him by the government, which stated in relevant part: "As you know, Advanced America's response to the Government's request for production of documents, served on you December 6, 1991, was originally due on January 8, 1992. [Y]ou have made no responses to the Government's request for documents." These letters suggest that Advance America was or reasonably should have been aware of a separate request for documents. It appears that the only other thing Mr. Gdanski could have done was bang on Mr. Jannings' office door with the message.

In light of Advance America having in its possession copies of the letter indicating that enclosed was a separate request for production of documents, additional letters which repeatedly pressed for compliance with the request for production of documents, a copy of the letter from the government stating that it had received no response to its request for production of documents, and the July 15, 1992 letter that indicated that Advance America employees were working on the document request, this court finds Advance America's claim that it was unaware of the separate request for production of documents to be incredible. Since Advance America's mistake with regard to the existence of a separate request for production of documents is totally unreasonable, the court finds that the plaintiff has not presented a meritorious defense which would support a finding of excusable neglect.

### 2. Advance America's Own Culpable Conduct

Advance America contends that it is a small, unsophisticated company which is not culpable for failing to comply with this court's discovery orders. Instead, Advance America argues that the sanction of dismissal is unjust because its counsel was culpable for failing to keep it informed of the status of the case. Similar to its argument based upon mistake, Advance America argues that its attorney is the cause of its failure to respond to the discovery requests by not sufficiently explaining that the Request for Production of Documents was separate from the interrogatories. Advance America claims that its violations of the court's discovery orders were therefore not wilful, and that it would be

unjust to punish it for abuse of the discovery process for its attorney's culpable conduct.

Plaintiff does not contend that dismissal is inappropriate for wilful disobedience of court orders by a party. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam); *White Mount. Apache Tribe v. United States*, 5 Cl.Ct. 288, 295 (1984). Instead, plaintiff argues that some circuits have indicated that dismissal is generally not the proper sanction when the improper conduct is wholly the fault of the party's attorney. *Buck v. United States Dep't of Agric.*, 960 F.2d 603, 609 (6th Cir.1992); *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir.1988); *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953 (4th Cir.1987).

However, the Supreme Court has suggested that a client is bound by the actions of its chosen attorney, noting in a recent opinion, *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership*, —— U.S. ——, ——, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993), interpreting excusable neglect under Bankruptcy Rule 9006(b)(1), that:

> we have held that clients must be held accountable for the acts and omissions of their attorneys. In *Link v. Wabash R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), [*reh'g denied*, 371 U.S. 873, 83 S.Ct. 115, 9 L.Ed.2d 112 (1962)] we held that a client may be made to suffer the consequence of dismissal of its lawsuit because of its attorney's failure to attend a scheduled pretrial conference. In so concluding, we found "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." *Id.* at 633, 82 S.Ct. at 1390.

This court had an unusual role in another case in which misconduct that was wholly the fault of the party's attorney caused a dismissal. In *Strand Electric v. United States*, 14 Cl.Ct. 763 (1988), this court dismissed the plaintiff's claim under RCFC 41(b) for failure to prosecute after the plaintiff's new attorney, Mr. James N. Barber, repeatedly failed to file a notice of appearance or otherwise participate in the case. Mr. Barber represented to Strand Electric that the case was still proceeding, and sent Strand Electric several forged court documents, including a wholly forged opinion allegedly by the Chief Judge. Mr. Barber was eventually indicted and convicted of forgery. *United States v. Barber*, 39 F.3d 285, 287 (10th Cir.1994). Apparently, Strand Electric did not seek to refile its original claim in this court, and thus this court did not have the opportunity to decide if a showing of misconduct wholly the fault of an attorney can overcome an earlier dismissal. However, this situation is far from the present case where evidence of any attorney fault seems weak, at best.

This court is aware that dismissal is considered a harsh sanction for improper conduct. *Kadin Corp. v. United States*, 782 F.2d 175, 176 (Fed.Cir.1986), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). This is one of the reasons why the court insisted that Advance America's president personally sign a sworn statement certifying its attorney's assertion to the court that the materials sought by the government in its Request for Production of Documents did not exist. In *Advanced*, this court found that Advance America's own culpable conduct in falsely certifying that the documents did not exist was central to the imposition of the sanction of dismissal. The court noted that although its counsel may bear some responsibility for these sanctions, Advance America itself was in control of its litigation and was primarily, or perhaps even totally, responsible for this sanction.

To evaluate Advance America's claim that its counsel was solely responsible for the failure to respond to the court's discovery orders, the court re-examined the record and the materials Advance America provided in its motion to supplement the record, recognizing that this supplement may not represent all of the communication between Advance America and its attorney.

In status conferences held on November 12 and 18, 1992, Mr. Gdanski represented to the court that no documentation responsive to the government's document requests existed. The court stated that if this were true, the government was entitled to have this representation memorialized in writing by

the plaintiff, and ordered Advance America to file by November 30, 1992, a statement certifying that all of the remaining documents sought by the government did not exist. The first certification does lend some support to Advance America's position that the only documents it actually believed were at issue were those requested in the government's interrogatories. Advance America argues that the fact that this initial limited certification was drafted by its attorney suggests that Advance America reasonably relied on its attorney for its position.

On February 11, 1993, Mr. Gdanski sent Advance America a letter requesting a revised sworn statement that shows "that your representation also applies to any documents that have been requested by the government, either in it's [sic] interrogatories or request for production of documents." On the same day, Mr. Gdanski forwarded to Advance America a copy of the government's January 27, 1993 letter, in which the government contended that the original certified statement inadequately complied with the court's order.

> The statement addresses only documents requested pursuant to the Government's interrogatories; however, the statement must also certify that no documents requested in the Government's *requests for production of documents* exist.
>
> The statement refers only to the plaintiff's release of documents that "we intend to rely on"; however, pursuant to the Court's order, the certified statement must address any documents that have been requested by the Government, either in its interrogatories or requests for production of documents, *whether Advanced America intends to rely on them or not.* (Emphasis in original).

According to his January 20, 1995 affidavit, Mr. Jannings did not discuss this revision with Mr. Gdanski, including what the government was referring to when it stated that the statement must "also certify that no documents requested in the Government's *requests for production of documents* exist," or why it was required (emphasis in original). Instead, Mr. Jannings indicated in his affidavit that although he did not understand the need for a second certification, he assumed "that the documents requested were those responsive to the interrogatories or relevant in some way." Mr. Jannings further asserts that he submitted the second certification by editing and incorporated his earlier statement without the assistance of his attorney.

On April 19, 1993, Mr. Gdanski sent Advance America a copy of the government's renewed motion to dismiss along with a letter requesting an affidavit explaining the apparent inconsistency between the certifications and the fact that documents the government considered responsive were brought to the depositions. According to Mr. Jannings' January 20, 1995, affidavit, Advance America did not discuss this issue with its attorney, but merely provided an unresponsive affidavit that stated in relevant part:

> To demand that Advance America submit "all documents that we intend to rely on" was unreasonable and unjustified. As is apparent from the accompanying "List and Definitions" of all file documents in our possession, it would be virtually impossible to submit copies of all these documents. As can be determined by reading this list, they number many, many hundreds.

Parties, as opposed to their attorneys, are ultimately responsible for their cases and are culpable if they violate the laws and rules in the course of their litigation. Among other duties, parties are responsible for monitoring their litigation, understanding the basic facts, the existence of significant documents, and for the accuracy of any testimony they provide, including certifications and affidavits. *See* Model Rules of Professional Conduct, Rule 1.2 and Comment (1992) (noting that the party or client has the ultimate authority and responsibility for the major decisions in the course of its representation). One of the reasons this court required certification by the party in this case was to insure that the representations made by Advance America's attorney were accurate.

There is little evidence that plaintiff's attorney, Mr. Gdanski, is even partially responsible for plaintiff's failures. Only the first certification and the fact that Mr. Gdanski called his client "Advanced" rather than "Advance" lend any support to the contention

before this court that Mr. Gdanski was responsible for plaintiff's failure to respond to the document requests. These facts merely show a communication failure which also may be wholly the client's fault. However, as noted by the court at oral argument held on June 7, 1995, this court has no jurisdiction to consider a malpractice action between plaintiff and its former attorney.

The court is also skeptical of the inconsistent interpretations of relevancy the plaintiff would have the court accept to justify its failure to provide the documents requested by the government. Mr. Jannings stated in his January 20, 1995, affidavit, referring to the documents brought to the depositions, "in our judgment, these documents are not at all pertinent to the claim for damages. Right or wrong, this has been and continues to be our position." Earlier in this same affidavit, however, Mr. Jannings admitted that "[w]hen we were scheduled for deposition, we gathered the documents that we thought were relevant as well as other documents we anticipated might be helpful." Nevertheless, Mr. Jannings did not find these documents to be relevant when he signed the second certification.

Since Mr. Jannings stated in his January 20, 1995 affidavit that he understood the second certification to apply to those documents that were responsive to the government's interrogatories "or relevant in some way," this contradiction is not explained by the alleged misunderstanding between Advance America and its attorney. Apparently, Mr. Jannings found the documents at issue relevant or helpful for his use at the depositions, but not at all pertinent for use by the government, nor relevant for purposes of the second certification. The court cannot condone this inconsistent and self-serving interpretation of what documents were relevant, and thus the court must reaffirm its earlier conclusion that Advance America was culpable for falsely certifying that no further relevant documents existed.

### 3. Prejudice

This court found in the sanctions order that Advance America's actions prejudiced the government by unnecessarily accumulating attorney fees and by making it impossible for defense counsel to properly prepare its case. Advance America has not introduced any new evidence that merits a reversal of this conclusion. Indeed, after Advance America's continued refusal to furnish required documentation, the court finds startling if not incredible Advance America's recent assertion that this case could be decided on documentary evidence alone!

## II. Extension of Time for Appeal

■ As an alternative to reviewing this court's sanctions order, Advance America seeks an extension of time within which to file a notice of appeal, pursuant to FRAP 4(a)(5).[3] Since the time for appeal of the sanctions order expired on December 23, 1994, Advance America concedes that it was at least one day late in filing its notice of appeal. Advance America makes four related arguments to show excusable neglect. First, Advance America argues that the court should find excusable neglect because Advance America never received a copy of the entry of judgment. Second, Advance America argues that its attorney did not advise it of the deadline for appeal, and once it knew the deadline it acted diligently, but ultimately unsuccessfully to file this appeal. Third, Advance America argues that the reason its appeal was late was because of errors by its new counsel. Fourth, Advance America suggests that this court find that the equities favor granting an extension of time to appeal.

The deadline for appeal is mandatory because unexcused failure to comply deprives the court of jurisdiction to hear the appeal. *Browder v. Director, Dep't of Corrections,* 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521, *reh'g denied,* 434 U.S. 1089, 98 S.Ct. 1286, 55 L.Ed.2d 795 (1978) (citations omitted). Parties have been strictly held to the requirements for filing an appeal because untimely filing affects the court's jurisdiction.

---

**3.** Under RCFC 72, FRAP 4(a) governs the time and manner for appeals from the Court of Federal Claims.

*In re O.P.M. Leasing Serv., Inc,* 769 F.2d 911, 916 (2d Cir.1985). Under FRAP 4(a), an extension of time to appeal may be granted by the trial court if the movant can show good cause before the expiration or excusable neglect. The Advisory Committee Notes to the 1979 amendments indicate that after the deadline for an appeal has passed only the excusable neglect standard is applicable. Advisory Committee Notes to the 1979 Amendment to Fed.R.App.P. 4(a)(5); 9 Moore's Federal Practice para. 204.13[1.–1] (2d ed. 1990), *cited in Cleek Aviation v. United States,* 20 Cl.Ct. 766, 767 (1990), *mot. denied,* 22 Cl.Ct. 260 (1991) (citations showing that a majority of circuits have interpreted the rule in this manner omitted). Since Advance America concedes that it was at least one day late, only the excusable neglect standard is applicable.

■ Advance America's first argument is that this court should find excusable neglect because Advance America was not aware of its need to appeal because its attorney had not forwarded to it a copy of the entry of judgment. Excusable neglect may be found when a party has failed to learn of an entry of judgment or in extraordinary circumstances when injustice would result. *Vogelsang v. Patterson Dental Co.,* 904 F.2d 427, 431 (8th Cir.1990), citing *Benoist v. Brotherhood of Locomotive Eng'rs,* 555 F.2d 671, 672 n. 1 (8th Cir.1977).

However, the Supreme Court recently has reaffirmed its ruling that "a party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Pioneer,* —— U.S. at ——, 113 S.Ct. at 1499 (internal citations omitted). Moreover, the failure of both the losing party and its counsel to receive the notice of the entry of judgment by itself did not constitute excusable neglect "where the losing party had promptly received the court's opinion and order, and the only extenuating circumstance was the failure of the clerk to send notice of the entry of judgment." *O.P.M. Leasing,* 769 F.2d at 911.

In the case at bar, Advance America's original attorney forwarded to it a copy of the court's opinion in *Advanced* in August,

1994. *Advanced* was not actually filed (*nunc pro tunc*) until October, 1994, so Advance America had two additional months from its receipt of the opinion to file an appeal. Advance America concedes that its counsel had notice of the entry of judgment, and under *Pioneer* the notice provided to its attorney is legally charged to Advance America. Finally, Advance America's letter to its attorney, in which it asked about pursuing an appeal, indicates that *Advanced* had sufficient notice that an appeal was necessary to continue this litigation. Based on these facts, this court finds that Advance America had sufficient notice of the court's sanction such that its attorney's failure to forward the actual entry of judgment does not establish excusable neglect.

The second argument presented by Advance America is that its attorney did not inform it of the time for appeal. The facts of this case suggest that Advance America should have been aware that there was a deadline to file an appeal. This court stated in *Advanced* that "defendant's motion to dismiss is granted. The clerk of the court is directed to dismiss the case with prejudice." With about half the appeal period remaining, Mr. Gdanski responded to an inquiry from Advance America about an appeal by informing Advance America that he did not recommend an appeal because of the severity of the sanction and referring Advance America to contact the clerk of this court to determine the deadline for an appeal. This court finds that Advance America should have been aware that the appeal period would expire soon after the sanctions order was issued.

■ Advance America argues that it is entitled to an extension of time to appeal based on the its new counsel's mistakes relating to filing its appeal. Many courts have been reluctant to find excusable neglect due to a minor error by counsel. *See, e.g., Parke–Chapley Constr. Co. v. Cherrington,* 865 F.2d 907, 913 (7th Cir.1989). Various rulings by this court have suggested that a minor mistake by counsel does not constitute excusable neglect. *See, e.g., Cleek,* 20 Cl.Ct. at 768 (citing the Federal Circuit's holding in *Danna v. United States,* No. 83–1083, slip. op. (Fed.Cir. Nov. 7, 1983)); *Diliberti v.*

*United States,* 4 Cl.Ct. 505, 506 (1984); *Prestex, Inc. v. United States,* 4 Cl.Ct. 14 (1983), *reconsideration denied,* 4 Cl.Ct. 317 (1984), *aff'd without op.,* 746 F.2d 1489 (Fed.Cir. 1984). In *Prestex,* for example, this court rejected an argument by counsel that confusion over the deadline for appeal induced by medicine taken for hypertension was proper grounds for finding excusable neglect. 4 Cl. Ct. at 17.

Excusable neglect has properly been found, however, in cases in other circuits in which the neglect was due to the unforeseen mistakes of neither the parties nor their counsel. *See, e.g., Redfield v. Continental Casualty Corp.,* 818 F.2d 596, 601 (7th Cir. 1987) (finding excusable neglect when court clerk failed to send appellant a copy of the order dismissing the complaint and then filed the original order under the wrong docket number); *Scarpa v. Murphy,* 782 F.2d 300, 301 (1st Cir.1986) (finding excusable neglect based upon a substantial unforeseen delay in the postal service's delivery of appellant's notice of appeal to the court).

Besides filing late, the mistakes plaintiff asks this court to overlook are that its second counsel, Mr. Walbran, apparently sent the notice of appeal to the wrong appellate court and could not file in this court because he was not a member of this court's bar. Unlike *Scarpa* or *Redfield,* these mistakes were not unforeseen and unrelated to the responsibility of the party or its attorney. In light of the various rulings of this court that minor mistakes by counsel do not create the excusable neglect necessary for leave to file an appeal, this court cannot find that these mistakes constitute excusable neglect.

Lastly, Advance America suggests that its late attempt at appeal and the mistakes by its new counsel are minor shortcomings that equity should excuse. Although the Supreme Court indicated in *Pioneer* that the decision of whether to grant additional time to appeal is largely an equitable one, the Court did not suggest that equity favors granting leave to appeal. *Pioneer,* — U.S. at —, 113 S.Ct. at 1499. While Advance America does have some equitable concerns on its side, namely that it attempted in good faith to file an appeal, this court must also weigh whether allowing this motion to provide Advance America with an extension of time to appeal on this ground "would frustrate and circumvent Rule 4(a)'s purpose of insuring finality of judgment." *Diliberti,* 4 Cl.Ct. at 507. *See also Pratt v. McCarthy,* 850 F.2d 590, 593 (9th Cir.1988), *reh'g denied,* 878 F.2d 331 (9th Cir.1989). After careful consideration of the equities of this case, and in light of the nature of the various errors involved in the failure to file an appeal, this court finds that it must decline to grant this motion based on equitable grounds.

## III. Conclusion

For the reasons set forth above, plaintiff's motions for relief from judgment and for leave to file an appeal are denied. Plaintiff's motion to supplement the record in this case is hereby GRANTED. Therefore, the various letters from Mr. Gdanski to Advance America and the January 20, 1995 affidavit of Mr. Jannings shall be added to the record. Pursuant to the order for sanctions in *Advanced,* plaintiff may file a response to the costs still at issue in the government's Bill of Costs within thirty days of the filing of this opinion. The government may file a reply within fifteen days of receiving any response.

**IT IS SO ORDERED.**